

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Mark Filip | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4220 | **DATE** | 9/9/2004 |
| **CASE TITLE** | ERIC LARAMORE vs. CITY OF CHICAGO | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the natu of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant City o Chicago's motion for summary judgment is Granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | | **Document Number** |
|---|---|---|---|---|---|---|
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | SEP 1 0 2004 | | | |
| ✓ | Docketing to mail notices. | | | date docketed | | |
| ✓ | Mail AO 450 form. | | | | | 73 |
| | Copy to judge/magistrate judge. | | | docketing deputy initials | | |
| TBK | courtroom deputy's initials | | | date mailed notice | | |
| | | | | mailing deputy initials | | |

U.S. DISTRICT COURT CLERK
2004 SEP -9 PM 4:56

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIC LARAMORE,                           )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )        Case No. 02 C 4220
                                         )
CITY OF CHICAGO,                         )        Hon. Mark Filip
                                         )
            Defendant.                   )



## MEMORANDUM OPINION AND ORDER

*Pro se* plaintiff Eric Laramore ("Plaintiff" or "Laramore"), who is African-American, is

suing defendant City of Chicago ("Defendant" or "City"), alleging that the City discriminated

against him on the basis of his race and retaliated against him in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Specifically, in his First Amended

Complaint (D.E. 23), Laramore alleges that the City denied him training based on his race,

disciplined him more severely than similarly situated employees, and terminated him on the basis

of his race, all in violation of Title VII.[1] (D.E. 23 ¶ 9.) Plaintiff also alleges that the City

retaliated against him for testifying in a sexual harassment hearing that took place sometime in

2000, with the retaliation taking the form of the City denying him training, disciplining him more

severely than others, and discharging him. (*Id.* ¶ 13.) Before the Court is the City of Chicago's

Motion for Summary Judgment. For the following reasons, the City's motion is granted.

## BACKGROUND

I.    Laramore's Summary Judgment Filings

      In light of Laramore's *pro se* status, the Court has generously construed his summary

---

[1]    The designation "D.E." refers to the docket entry number of the cited document.

judgment filings. Laramore did not file a formal memorandum of law in opposition to the City's motion for summary judgment. Rather, he filed a motion titled "Pro Se Plaintiff's Motion for Summary Judgment"(D.E. 63). The memorandum in support of this motion, in addition to requesting 14 million dollars in damages, also asserted that the "[C]ity should not be entitled to judgment as a matter of law." Pl.'s Mem. of Law in Supp. of Summ. J. (D.E. 63) at 2. After reviewing Laramore's filing, the Court issued a minute order notifying the parties that it would "be viewed by th[e] [C]ourt as [Laramore's] response" to the Defendant's motion for summary judgment. (D.E. 66.) Laramore also filed a "Local Rule 56.1(A) Statement of Undisputed Material Facts" (D.E. 64), which could be—given generous construction—construed as an attempt at a mixed Local Rule 56.1(b)(3)(B) statement of additional facts and a Local Rule 56.1(b)(3)(A) response to the City's Local Rule 56.1(a) statement.

A.    Laramore Has Not Complied with Local Rule 56.1

Laramore's 56.1 statement (cited herein as "Pl.'s Resp."), however, whether viewed as a response or statement of additional facts, does not contain citations to any affidavits, the record, or any other supporting material as required by Local Rules 56.1(b)(3)(A) and 56.1(b)(3)(B).[2]

---

[2]    Plaintiff also submitted an affidavit (D.E. 65) in opposition to summary judgment. This affidavit, however, contains patently conclusory statements, which precedent teaches are not sufficient to forestall otherwise appropriate summary judgment. *See, e.g., Rogers v. City of Chicago*, 320 F.3d 748, 751 (7th Cir. 2003) (stating that "self-serving affidavits without factual support in the record do not create a genuine issue of material fact") (citation omitted); *Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998) ("It is well established in this Circuit that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment."); *see also* Fed. R. Civ. P. 56(e) ("[A]ffidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence . . . ."). For instance, in the affidavit Plaintiff states that "[t]here are genuine issue [sic] of material facts that need[] to be resolved" (D.E. 65 ¶ 4) and that "his rights were violated" (*id.* ¶ 8). Laramore also vaguely asserts that his "arrest at the airport" (apparently a reference to one of several incidents of misconduct that occurred while Laramore was employed by the City) "was just a

2

And to the extent it could be construed as a Local Rule 56.1(b)(3)(A) response, the Court notes that it is substantially incomplete. It directly responds only to two (out of 39) of the City's statements of fact, and both of Laramore's responses appear to be admissions—he apparently admits, as discussed below, that he had an excessive absenteeism record and left work early on many occasions and that he was tardy more than 70 times from January 2000 through May 2001. (D.E. 64 ¶¶ 15, 16.)

The City pointed out these deficiencies in its Reply Memorandum of Law in Further Support of its Motion for Summary Judgment (D.E. 67), and in response, Laramore filed a "Local Rule 56(d) Statement of Case Not Fully Adjudicated."[3] (D.E. 71.) In that filing, Laramore acknowledged the City's 56.1 arguments and requested that the Court allow him an opportunity "to repair and or amend his Motion for Summary Judgment." (*Id.* ¶ 9.) The Court construed this request broadly in Plaintiff's favor and granted Laramore an opportunity to amend both his 56.1 filings and also his summary judgment response. (*See* D.E. 69.) As of the date of this opinion—which is approximately three months after the date of Laramore's request to amend—Laramore has not amended his Local Rule 56.1 statement or his summary judgment response, notwithstanding that he was directed to file amended papers by June 22, 2004. (*Id.*)

---

misunderstanding that was blown out of proportion." (*Id.* ¶ 6.) Under the precedent stated above, these conclusory and self-serving assertions are insufficient to deprive the City of Chicago of a judgment to which it otherwise is entitled.

[3] There is no "Local Rule 56(d)" in this district. The Court assumes that Plaintiff was attempting to invoke Federal Rule of Civil Procedure 56(d), which has no relevance to the instant dispute. In any event, regardless of its title, the Court construed the motion as requesting an opportunity to remedy the substantial defects in Plaintiff's summary judgment filings.

B.  Laramore Had Notice of and an Opportunity to Correct His Defective Summary Judgment Filings

Laramore had notice of the defects in his summary judgment filings, as well as ample opportunity to remedy them.  First, the City represented to the Court that it "complied with its obligation to provide [Laramore] with the required notice to a pro se litigant opposing a motion for summary judgment," (D.E. 67 at 2 n.1), and the City included in its summary judgment papers a copy of a letter to Plaintiff concerning his Rule 56.1 and summary judgment responsibilities.  (*Id.*, Ex. 1.)  Second, Laramore had the full benefit of the arguments directed at his deficient filings in the City's Reply brief, which argued at length that his Local Rule 56.1 filing and summary judgment response were inadequate, and it was the City's Reply that prompted Laramore to request an opportunity to amend his summary judgment filings.  (*See* D.E. 71 ¶ 9 ("It has been stated in Defendant's Reply that . . . Plaintiff, [sic] has not . . . met the requirements of Local Rule [56.1] . . . .").)  Third, on July 6, 2004 (or some two months ago), the City filed a Reply in Further Support of Defendant's Motion for Summary Judgment (D.E. 72).  In that motion, the City detailed the events surrounding the Court's grant of additional time for Laramore to amend his summary judgment filings, noted that Laramore had "not filed an amended response," and noted that the City considered the case fully briefed.  (*Id.* ¶ 5.)  Laramore did not respond to this filing or seek any further extension of time.

C.  The Court Deems Admitted Properly Supported Factual Assertions in the City's Local Rule 56.1(a) Statement

While this Court is generally solicitous of *pro se* plaintiffs confronting the procedural requirements of responding to summary judgment motions, precedent teaches that Laramore's *pro se* status does not absolve him from meaningfully complying with Local Rule 56.1.  *See, e.g.,*

4

*Greer v. Bd. of Educ. of the City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Stevens v. Navistar Int'l Transp. Corp.*, 244 F. Supp. 2d 906, 910 (N.D. Ill. 2002) (St. Eve, J.) (collecting cases); *accord Members v. Paige*, 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced"). The Seventh Circuit has "consistently and repeatedly upheld" district courts' discretion to require compliance with the local rules governing summary judgment. *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000); *accord, e.g., Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (collecting numerous cases). In light of the notice and opportunity to amend afforded Laramore, the Court exercises that discretion here. The City of Chicago's Local Rule 56.1(a)(3) statements are deemed admitted to the extent that they are properly supported by affidavits, record evidence, or other supporting material. *See* Local Rule 56.1(b)(3)(B) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *see also, e.g., O'Donnell v. City of Chicago*, No. 02-1847, 2003 WL 22339285, at *1 n.1 (N.D. Ill. Oct. 14, 2003) (Castillo, J.) (accepting as true all facts set forth in defendant's statement of material fact where *pro se* plaintiff failed to comply with Local Rule 56.1(b)).[4]

II.     Facts

The following facts are taken from the City of Chicago's Local Rule 56.1(a) statement.

---

[4]     The Court notes that what could be construed as additional statements in Laramore's 56.1 filing do not comply with Local Rule 56.1(b)(3)(B) concerning "the citation references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(b)(3)(B). Moreover, many of these statements contain improper conclusions and argument.

The City employed Laramore from May 21, 1990, until his discharge on August 1, 2001.[5]
(Def.'s St. ¶ 1.) At the time of his discharge, Laramore was working as a Service Writer for the
City's Department of Fleet Management. (*Id.*) A Service Writer predominately uses the City's
tracking system, the V Mart system, to track the maintenance of vehicles that are handled by the
Department of Fleet Management, including vehicles at municipal airports, the Chicago Park
District, and the Chicago Fire Department. (*Id.* ¶ 12.) The V Mart system is a computer system
with a database that provides information on what has been done on City equipment so as to
maintain reports for accountability purposes. (*Id.* ¶ 13.) A Service Writer's duties include
collecting information from drivers, logging in information into the database so that work orders
can be issued to mechanics, handling road calls, and creating a "history" of problems with all
City vehicles. (*Id.* ¶ 12.) Laramore's direct supervisors were Cleveland Thomas and Gregg
Sponsky.[6] (*Id.* ¶ 26.)

Laramore has a history of work-related disciplinary problems. In September 1999, the
City suspended Laramore for three days for violating the City of Chicago Personnel Rules, based
on his intimidation of a supervisor and his non-compliance with certain rules. (*Id.* ¶ 34.) This
was not his first run-in with an authority figure at work: Laramore was also disciplined for
insubordination in January 1997 and February 1997. (*Id.* ¶ 37.) He was also suspended for 10
days in 1999 for breaching security at O'Hare Airport. (*Id.* ¶ 35.) In addition, Adrienne Kane,

---

[5]     Defendant's Local Rule 56.1(a) Statement ("56.1 Statement" or "Def.'s St.") of
Undisputed Facts cites to paragraph one of the Affidavit of Adrienne Kane for this proposition.
The support for this assertion, however, is contained in paragraph three of Ms. Kane's affidavit.

[6]     Defendant's 56.1 Statement also suggests that Lewis Peters was one of Laramore's direct
supervisors; however, Defendant's record cite does not support this statement of fact.

Employee Relations Supervisor for the City of Chicago Department of Fleet Management, who was involved in Laramore's disciplinary process, met with Laramore and counseled him at least five times between 1996 and 2000 concerning certain attendance problems and tardiness. (*Id.* ¶ 38.) Laramore does not dispute that he was late for work more than 70 times from January 2000 until May 2001. (*Id.* ¶ 16; Pl.'s Resp. ¶ 16.)

On June 21, 2001, the City presented Laramore with a Statement of Charges and Explanation of Evidence and advised him that the City was seeking to discharge him for violating several City Personnel Rules. (Def.'s St. ¶ 11.) From June 21, 2001, until August 1, 2001, the date of his termination, Laramore was placed on an administrative leave of absence from the workplace. (*Id.* ¶ 11.) On October 2 and November 1, 2001, a hearing was held before the Personnel Board of the City of Chicago, at which Laramore, who was represented by counsel, contested his discharge. (*Id.* ¶ 8.) On November 24, 2001, the hearing officer of the Personnel Board issued a Hearing Officer's Report to the Personnel Board in the Matter of Eric Laramore, 01 PB 151. (*Id.* ¶ 9.) In the Findings and Recommendation, the hearing officer found that Laramore's "conduct such as insubordination, incompetence, excessive absenteeism and tardiness are in violation of the City of Chicago Personnel Board Rules and Standards[;] therefore, [Laramore's] discharge should be upheld." (*Id.* ¶ 9.) On January 15, 2002, the Personnel Board issued its decision, finding that '[b]ased on the evidence presented and after full discussion, . . . [Laramore's] discharge should be upheld." (*Id.* ¶ 10.)

On April 26, 2002, Laramore filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging that the City discriminated against him because of his race and retaliated against him for his participation in a sexual harassment investigation that took place in

2000.[7]  (*Id.* ¶ 5.)  With respect to his retaliation claim, Laramore testified that he believed that his termination was in retaliation for his giving deposition testimony in late 1999 and 2000 in a civil sexual harassment suit.  (*Id.* ¶ 30.)  He also testified that he believes that he was denied training as a consequence of his giving deposition testimony, and that he was disciplined more severely beginning in January 2001.  (*Id.* ¶ 32.)  At his deposition, however, Laramore did not identify the allegedly offending discipline or the date of that discipline, and he could not provide documentation to support his claim that he was disciplined "more severely."  (*Id.* ¶ 33.)  Laramore also has failed to identify in his summary judgment papers any similarly situated non-African American comparators who were treated more favorably by the City.  With respect to his claims of racial discrimination, it is undisputed that neither Sponsky nor Thomas, Laramore's direct supervisors, have ever used racially derogatory language toward Laramore.  (*Id.* ¶ 28.)

## ANALYSIS

III.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Federal Rule of Civil Procedure 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

---

[7]     Defendant contends that Laramore filed the charge with the EEOC on April 22, 2002. Laramore's charge, however, indicates that he filed it on April 26, 2002.

bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *accord, e.g., Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir.1995). When a plaintiff proceeds under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), as Laramore must do here,"[i]t is axiomatic that there can be no genuine issues of material fact if the plaintiff is unable to establish a *prima facie* case 'since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir. 1993) (quoting *Celotex*, 477 U.S. at 323)).[8] In ruling on a summary judgment motion, it is not a court's "function to scour the record in search of evidence to defeat . . . summary judgment; [a court relies] on the nonmoving party to identify with reasonable particularity the evidence upon which [the nonmoving party] relies." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *see also, e.g., Richards*, 55 F.3d at 251.

IV.    Laramore Cannot Establish a Prima Facie Case of Discrimination or Retaliation

In Laramore's summary judgment papers, he acknowledges the burdens imposed on both him and the City in connection with the City's summary judgment motion. For instance,

---

[8]    There is no real question that Laramore must attempt to proceed under the indirect method of proof outlined in *McDonnell Douglas*. In this regard, Laramore identifies no admission by Defendant of the sort that precedent identifies as typically required to constitute "direct" evidence such that he could proceed under the direct method of proving his Title VII claims. *See, e.g., Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.* 328 F.3d 309, 321 (7th Cir. 2003) (noting that "[d]irect evidence usually requires an admission by the decisionmaker that his actions were based" on an illicit reason); *see also Rogers v. City of Chicago*, 320 F.3d 748, 753-754 (7th Cir. 2003) (discussing admissions, convincing-mosaic analogy, and the direct method of proof); *Castleman v. ACME Boot Co.*, 959 F.2d 1417, 1422 (7th Cir. 1992) (teaching that direct evidence will "rarely" be found). In any event, Laramore has not produced any competent evidence to survive summary judgment, so a discussion of the direct versus indirect method of proving a Title VII claim would not be of practical significance.

9

Laramore correctly notes that the City may meet its initial summary judgment burden by "demonstrating the absence of evidence to support the non-moving party's case." (D.E. 63-2 at 3 (citing *Celotex*, 477 U.S. at 323).) He also correctly notes that, once Defendant has pointed to the absence of such evidence, he must, "through affidavits (or) other kinds of evidentiary material listed in [Federal Rule of Civil Procedure] 56(c)," show that there is a genuine issue for trial. (*Id.* (citing Celotex, 477 U.S. at 324).) Laramore further acknowledges that he "cannot rely on 'the mere pleadings themselves', or simply set forth speculation, allegations, or denials[,] to demonstrate [a] genuine issue of fact." (*Id.*) Despite his awareness of these burdens and the manner in which the moving and non-moving parties can satisfy them, Laramore's summary judgment response fails to do any of the things he acknowledges that he must do to defeat the Defendant's summary judgment motion.

The City of Chicago makes persuasive arguments that it is entitled to summary judgment for multiple, independent reasons. A common thread, however, that runs through each of the arguments directed at each of Laramore's claims is that he cannot establish a *prima facie* case for those claims, and even if he could establish a *prima facie* case, he cannot establish that the City's apparently non-discriminatory reasons (at least with respect to Laramore's unlawful discharge and retaliation in the form of discharge claims) for the adverse employment actions were pretextual. For his claims to survive summary judgment, Laramore must establish *prima facie* cases of racial discrimination and retaliation. With respect to his racial discrimination claims, Laramore must show that (1) he is a member of a protected class; (2) he was performing his job satisfactorily; (3) the City took an adverse employment action against him; and (4) the City treated at least one similarly situated individual outside of his protected class more favorably.

*See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1011 (7th Cir. 2004).[9] With respect to his retaliation claim, Laramore must establish that the Defendant "subjected him, and not any similarly situated employee who did not oppose impermissible discrimination, to an adverse employment action even though he was performing his job satisfactorily." *Id.* (citing *Rogers*, 320 F.3d at 754); *see also Hudson v. Chicago Transit Auth.*, 375 F.3d 552, 560 (7th Cir. 2004).

The Court notes that the Defendant appears to have erroneously stated the law with respect to Laramore's failure-to-train claim. Defendant contends that "the alleged denial of training, even if true, does not rise to the level of an adverse employment action." (D.E. 56-2 at 7.) The Court respectfully disagrees—or at least will proceed on the assumption that such a claim (if otherwise meritorious) can succeed, although the Court need not definitively resolve this legal issue because Laramore cannot make out a successful failure-to-train claim in any event. Despite Defendant's assertion that failure-to-train does not constitute an adverse

---

[9] With respect to Laramore's claim that he was disciplined "more severely" based on race, the Seventh Circuit has indicated that a district court should focus on the issue of pretext (rather than the "satisfactory performance" prong of a plaintiff's *prima facie* case) when the underlying claim alleges disparate punishment. *See, e.g., Curry v. Menard*, 270 F.3d 473, 478 (7th Cir. 2001). As noted, however (*supra* at 8), Laramore has not identified what, if any, actual discipline he takes issue with other than his discharge. (The City of Chicago also focused its pretext analysis on the subject of Laramore's discharge, given his framing of the case.) The Court, therefore, cannot assess whether there is a triable issue in the record concerning pretext with respect to Laramore's disparate punishment claim, to the extent he is referring to anything other than his discharge in the First Amended Complaint. *Accord, e.g., Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) (non-movant must identify evidence establishing triable issue, and Court need not scour record to try to find one). In any event, and independently, Seventh Circuit precedent teaches that in disparate punishment cases, a plaintiff must establish that his or her performance, qualifications, and conduct are substantially similar to members of a non-protected class. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617-618 (7th Cir. 2000). As Laramore has, as a threshold matter, failed to identify a single such comparator, he cannot meet this burden, making any analysis of pretext related to discipline other than Laramore's discharge unnecessary.

employment action as a matter of law, the Seventh Circuit appears to recognize the failure-to-train claim under Title VII. *See Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000) (citing *Pafford v. Herman*, 148 F.3d 658, 667 (7th Cir. 1998)). Precedent teaches that to establish a *prima facie* failure-to-train case, a plaintiff must demonstrate that: (1) he is a member of a protected group; (2) the City provided training to its employees; (3) he was eligible for training; and (4) he was not provided training under circumstances giving rise to an inference of discrimination, i.e., that he was denied training given to other similarly situated employees who were not members of the protected group. *See id.*, 224 F.3d at 729.

Defendant argues, among other things, that Laramore cannot establish a *prima facie* case of racial discrimination or retaliation because he cannot establish that he performed his job satisfactorily or that any similarly situated employee was treated more favorably than he was. (*See* D.E. 56-2 at 5-6 (Laramore cannot establish a *prima facie* case that his termination was based on race); *id.* at 6 (Laramore cannot establish a *prima facie* case that he was denied training based on his race or establish a *prima facie* case that he was disciplined more severely based on his race); *id.* at 10 (Laramore cannot establish a *prima facie* case of retaliation).) The Court agrees. Laramore has failed to present any evidence to establish these related elements of his *prima facie* cases of discrimination and retaliation. Indeed, in his summary judgment filings, Laramore has not identified a single comparator—let alone a similarly situated non-African-American individual who was treated more favorably than he was. Moreover, Laramore does not dispute the City's proffered reasons for his termination, *i.e.*, that he was terminated for violating City Personnel Rules.

Laramore's failure to produce evidence that (1) he was performing his job satisfactorily

12

(he does not dispute the reason that he was discharged) or (2) that he was similarly situated to non-African American individuals working for the City who were treated more favorably than Laramore defeats his claims. For example, Laramore's inability to establish that he was treated differently than a similarly situated non-African-American employee is fatal to (1) his unlawful discharge claim, (2) his failure-to-train claim, (3) his claim that he was disciplined "more severely," and (4) his retaliation claim (regardless of whether the alleged retaliation took the form of a discharge, failure to train, or discipline). *See Little*, 369 F.3d at 1011 (plaintiff must identify a similarly situated individual for a *prima facie* case of discrimination and a *prima facie* case of retaliation); *Malacara*, 224 F.3d at 729 (plaintiff must identify a similarly situated individual for a *prima facie* case of failure-to-train).

Likewise, the "satisfactory performance" element is also common to each of Laramore's *prima facie* cases, except his failure-to-train claim and his disparate punishment claim, as discussed in note nine, *supra*. *See, e.g., Little*, 369 F.3d at 1011 (plaintiff must establish that he or she was performing his or her job satisfactorily for *prima facie* cases of discrimination and retaliation). And his failure to present evidence on this front is a fatal, independent defect in the *prima facie* cases that require such proof—one that mandates that the Court grant summary judgment in the City's favor. *See* Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if . . . there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."). Laramore admits to tardiness and absenteeism (D.E. 64 ¶¶ 15, 16) and appears to acknowledge that discipline for his work-related behavior was appropriate (*id.* ¶ 17 ("[I]f he had gotten time off for his absenteeism he would have accepted it . . . .")).

Laramore's summary judgment response does not cite to any proper evidence or any other

material in support of any of the arguments that it contains, and much of it is non-responsive.

For instance, Laramore contends that on September 17, 2000, an individual named Lewis Peters (whom Laramore identifies as an African-American foreman in his 56.1 filing) racially harassed him by "violently snatching a radio out of [his] hands [and] striking him with the cord of the radio and 'elbowing'" him. (D.E. 63-2 at 5 (emphasis omitted).) Laramore cites nothing in support of this contention, and this statement, even if true, does nothing for the substantial defects in Laramore's *prima facie* cases.[10] Similarly, Laramore's 56.1 filing also makes various statements that have no bearing on the proper disposition of the City's motion: for example, Laramore contends that "[a]lthough it may not be the policy of . . . [the City of Chicago] to allow employees to arrive late for work and st[a]y late to make up the time, . . . this policy if in place is flawed." (D.E. ¶ 18). But this objection is unavailing, as precedent repeatedly teaches that federal courts are not to sit as super-personnel-departments over employers—*see, e.g., Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000)—and Laramore's disagreement with the City's requirement that its employees report to work on time does not render that policy unlawful.

Finally, Laramore appears to argue that racial slurs "made by [a] co-worker" and a decision-maker establish race discrimination in this case. (D.E. 63-2 at 10.) This argument similarly does not forestall summary judgment. First, Laramore cites to no evidence indicating that a decision-maker or any of his co-workers made racial slurs to him. Second, even assuming a co-worker or decision-maker did make racial slurs to him, such statements, at least where those statements are unconnected to the adverse employment actions that Laramore has identified, are

---

[10]    The Court also fails to see how this act, standing alone, is evidence of racial discrimination, particularly given that Laramore indicates Peters is also African-American and is not alleged to have made any racist statements to Laramore.

14

insufficient to create an inference of unlawful discrimination under Title VII. *See, e.g., Hong*, 993 F.2d at 1266 ("We have held that [racial slurs], when unrelated to the decisional process, are insufficient to demonstrate that the employer relied on illegitimate criteria, even when such statements were uttered by a decision maker."); *Weisbrot v. Med. Coll. of Wis.*, 79 F.3d 677, 684 (7th Cir. 1996) ("A slur is not in and of itself proof of actionable discrimination, even if repeated.").

The Court further notes that Laramore also apparently attempts to amend his complaint with his summary judgment filings or otherwise assert claims that are not properly before the Court. In Section F of his memorandum, Laramore "contends that he was retaliated against because of his 'Free Speech', [sic] and 'First Amendment Rights' being violated [sic]." (D.E. 63-2 at 7-8.) Laramore's Complaint, however, does not assert any First Amendment claim, and Laramore cannot now attempt to amend his Complaint with his summary judgment filing. *See, e.g., Grayson v. O'Neill,* 308 F.3d 808, 817 (7th Cir. 2002); *Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997).

Laramore also contends that he is advancing a claim for discrimination based on his religion; that claim, however, like a First Amendment claim, is not properly before this Court. In the prayer for relief in his First Amended Complaint, Laramore asks for "a permanent injunction enjoining Defendant . . . from discriminating unlawfully against Laramore on account of his religion and . . . race." (D.E. 23 at 4.) The Court's review of the summary judgment briefs and Rule 56.1 papers initially indicated that this claim was waived by Laramore. For example, a copy of Laramore's deposition transcript that the City cited in its Local Rule 56.1 Statement indicates that when Laramore was questioned about a potential religious discrimination claim at

his deposition, he appears to have indicated that he was not claiming "that the City discriminated against [him] based on [his] religion." (D.E. 56, Ex. "Laramore Dep. Tr." at 65.) According to that transcript, Laramore affirmatively stated that the reference to his religion was "a typo" and that the discrimination claim is "just on [his] race." (*Id.*) In his 56.1 filing, however, Laramore states that he "is continuing his claim of religious discrimination." (D.E. 67 ¶ 27.) Based on Laramore's transcript statements that were cited by the City, however, it appeared that Laramore abandoned this claim by admitting in his deposition that he did not have a claim for religious discrimination. *See Veprinsky v. Fluor Daniel, Inc.*, No. 92-8271, 1994 WL 174136, at *2 (N.D. Ill. May 5, 1994) (Kocoras, J.), *aff'd in part and rev'd in part*, 87 F.3d 881 (7th Cir. 1996).

However, in the course of reviewing the case file, the Court found a binder of papers ("Binder") that Laramore appears to have submitted in connection with his summary judgment filings. Neither party discusses the Binder or cites it in its summary judgment papers (other than a brief reference from the City, asserting that Plaintiff's "exhibits" should be stricken, a request the Court need not rule upon to grant the City summary judgment), but inside the Binder are what at least appear to be errata sheets related to Laramore's deposition. (*See* Binder, Ex. 5.[11]) Those

---

[11]     The Court has reviewed the Binder. Putting aside the fact that district courts are not to scour records looking for triable issues, nothing in it (also putting aside any evidentiary or hearsay issues) creates a reason to deny the City summary judgment. Some of the documents in the Binder frankly appear to hurt Laramore's cause—such as, for example, arrest reports for Laramore concerning his apparent breach of security at O'Hare while working for the City, in which Laramore is stated to have threatened police officers and repeatedly shouted coarse obscenities. (Binder, Ex. 2.) Other documents are, at best from Laramore's perspective, neutral—such as, for example, a letter indicating that Laramore was accused of sexual harassment but the complaint was not sustained upon investigation. (*Id.*) Other documents seem to have no apparent relevance at all—such as, for example, a letter indicating that Laramore "called Bettye O. Day Spa on May 5, 2000 to inform us that he had recommended a co-worker . . . who had been complaining of backaches to come to Bettye O. for a massage and other treatments." (*Id.*, Ex. 4.) Some of the documents relate to Laramore's employment troubles with

16

errata sheets appear to indicate (and the Court will resolve any ambiguity in Laramore's favor) that Laramore made corrections to his deposition transcript that put the accuracy of the City's cited admission of Laramore about abandoning the Title VII-religion claim into question. (The City did not address or otherwise acknowledge these corrections.) Specifically, Laramore's errata sheet appears to suggest that the court reporter mis-transcribed his answer to the question of whether he was pursuing a religious discrimination claim. In this regard, Laramore's errata sheet indicates that instead of responding, "[n]o, that's a typo" he actually said simply, "Yes," meaning (presumably) that Laramore indicated that he was pursuing a religious discrimination claim. (*Id.*) Similarly, Laramore's errata sheet appears to indicate that the court reporter mis-transcribed the statement that "It's just on [his] race"—or, to be more precise, the Court reporter somehow erroneously added this statement because, apparently according to Laramore, he said nothing at all. The Court resolves this discrepancy in favor of Laramore, and therefore finds that Laramore did not waive such a claim.

Nonetheless, even if Laramore has not in fact waived a Title VII-religion claim, summary judgment in favor of the City is still warranted. As the City points out, a religious discrimination claim is beyond the scope of Laramore's EEOC charge. There is no mention of religion anywhere in the text of Laramore's EEOC charge, and he did not check the box indicating that he was alleging that he was discriminated against based on his religion. (*See* D.E. 56, Ex. 3.) Nor is

---

the City, but nowhere in the documents does he identify any similarly situated non-African-American comparator or otherwise cast doubt on the conclusion that the City is entitled to summary judgment because no reasonable jury would find in Laramore's favor on all of the elements he would need to prove in order to prevail. *See, e.g., Little v. Ill. Dept. of Revenue,* 369 F.3d 1007, 1016 (7th Cir. 2004) (summary judgment warranted against non-movant where he fails to identify evidence on material issue such that no reasonable jury could find in his favor).

17

a claim of religious discrimination, at least on the record presently before the Court, reasonably related to or expected to grow out of the allegations of racial discrimination or retaliation that are contained in Laramore's EEOC charge. *See, e.g., Flowers v. Columbia Coll. Chicago*, No. 03-9247, 2004 WL 1459346, at *2 (N.D. Ill. June 24, 2004) (Kocoras, J.) (religious discrimination claim not reasonably related to claim of retaliation in EEOC charge). Laramore also presents no evidence in support of any religious discrimination. In fact, it is unclear even what religion Laramore practices, and he does not identify anyone of a different faith who is otherwise meaningfully similarly situated and who was treated more favorably by the City. For all of these independent reasons, summary judgment in favor of the City of Chicago is appropriate even if the court reporter mistakenly transcribed what otherwise appears to be Laramore's disavowal of any Title VII-religion claim.

V.  Even if Laramore Could Establish Prima Facie Cases of Discrimination and Retaliation He Has Not Presented Evidence of Pretext with Respect to His Discharge

If Laramore were to establish *prima facie* cases of unlawful discrimination or retaliation in connection with his discharge, which he has not, the City would have the opportunity to articulate a non-discriminatory reason for the various allegedly unlawful adverse employment actions of which Laramore complains. Laramore would then have to put forth competent evidence that the proffered nondiscriminatory reason was a pretext for unlawful discrimination. To "demonstrate a material issue of fact as to pretext, [Laramore] must show that either (1) it is more likely that a discriminatory reason motivated the [City] than the proffered non-discriminatory reason or (2) that an employer's explanation is not credible." *Hudson*, 375 F.3d at 561 (citing *Guerrero v. Ashcroft*, 253 F.3d 309, 313 (7th Cir. 2001)). With respect to his

claims of unlawful discharge and retaliation that took the form of discharge, it is undisputed that the City discharged Laramore because he had violated several City of Chicago Personnel Rules. (Def.'s St. ¶ 11.) Indeed, with all respect to Plaintiff, the only thing that he has presented in an attempt to defeat the City's motion for summary judgment is an anecdotal account (unsupported by his affidavit) of an African-American foreman snatching a radio from his hands. This incident, even assuming it occurred, does not make it likely that Laramore suffered the adverse employment actions that he complains of based on a reason prohibited by Title VII.[12] Nor do other conclusory and inadequate statements in the Laramore affidavit of the sort that an airport arrest of Laramore was "just a misunderstanding that was blown out of proportion," and that "Laramore states with great confidence that he did not intimidate anyone at work at home or at play." (D.E. 65 ¶¶ 5, 6.)

VI.    The Court Need Not Address The Defendant's Timeliness Arguments, in Light of the Other Defects in Laramore's Claims

Defendant argues at various points throughout its summary judgment briefing that it is also entitled to summary judgment on the independent ground that many of Laramore's claims are untimely. This argument relates to a decision issued by Judge Anderson finding that many of Plaintiff's allegations were time-barred. (*See* D.E. 30 at 2-4 (citing *Sharp v. United Airlines,*

---

[12]    Many of the documents in the Binder appear to be intended to support the notion that Laramore's foreman was more culpable than he was in the "radio-snatching" episode. Even if that were true—and that appears to be a debatable issue—the salient points are (1) that neither Laramore nor the supervisor was found to have engaged in actionable workplace violence (Binder, Ex. 3); (2) that Laramore only received a citation for workplace insubordination and the supervisor only received a citation for conduct unbecoming a city employee (*id.*), both of which, incidentally, appear to have been fair assessments and well deserved; and, most importantly (3) this episode is just one of a bevy of reasons that the City relied upon in firing Laramore. (Def.'s St. ¶¶ 9-10.)

*Inc.*, 236 F.3d 368, 372 (7th Cir. 2001).) Given the substantial and fatal defects in Laramore's *prima facie* cases and his inability to demonstrate a material issue as to pretext with respect to his discharge, the Court need not address whether that ruling provides yet another independent reason to enter summary judgment in the City's favor. The Court also declines any invitation (Laramore perhaps has sufficiently questioned the legitimacy of Judge Anderson's prior ruling to potentially present the issue now) to review the propriety of Judge Anderson's prior decision. There are multiple, other independent bases on which to grant summary judgment, and precedent teaches that a district judge inheriting a case previously handled by a colleague should generally leave prior rulings alone. *See Best v. Shell Oil Co.*, 107 F.3d 544, 546 (7th Cir. 1997) (teaching that "the presumption [in such cases] is that earlier rulings will stand" and the prior rulings should be disturbed only "for compelling reasons"). Such an approach, the Seventh Circuit explains, "reflects the rightful expectation of litigants that a change of judges mid-way through a case will not mean going back to square one." *Id.* Given the various other reasons why the City is entitled to summary judgment, there is no reason for this Court to consider whether that prior time-bar ruling was correct.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted.

SO ORDERED.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: SEP 9 2004

20